UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRAXCELL TECHNOLOGIES LLC,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

Case No. 22-cv-04807-JSC

**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 31

Traxcell Technologies, LLC sues Google LLC for direct and indirect patent infringement. Now pending before the Court is Google's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Having carefully reviewed the parties briefing and having had the benefit of oral argument on November 17, 2022, the Court GRANTS Google's motion to dismiss in part. Traxcell has failed to allege facts that plausibly support direct infringement or pre-suit indirect infringement or any contributory infringement.

## BACKGROUND

Plaintiff filed this suit against Google for infringement of U.S. Patent No. 10,820,147 (the "'147 patent") in the Western District of Texas. (Dkt. No. 23.)  The U.S. Patent and Trademark Office issued the '147 Patent on October 27, 2020.  (Dkt. No. 23-1 at 1.)[1] The '147 patent is titled "Mobile wireless device providing off-line and on-line geographic navigation information." The '147 Patent's Abstract describes:

> A mobile device, wireless network and their method of operation provide both on-line (connected) navigation operation, as well as off-line navigation from a local database within the mobile device. Routing according to the navigation system can be controlled by traffic congestion measurements made by the wireless network that allow the navigation system to select the optimum route based on expected trip duration.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    (*Id.*)  In the First Amended Complaint ("FAC"), Traxcell alleges that Google Maps—the

2    "Accused System"—violated Claim 1 in the '147 patent. (Dkt. No. 23 at 4.)  Claim 1 provides:

> 1. A wireless communications system including:
> a first radio-frequency transceiver within a wireless mobile communications device and an associated first antenna to which the first radio-frequency transceiver is coupled, wherein the first radio-frequency transceiver is configured for radio-frequency communication with a wireless communications network;
>
> a first processor within the wireless mobile communications device coupled to the at least one first radio-frequency transceiver programmed to receive information indicative of a location of the wireless mobile communications device and generate an indication of a location of the wireless mobile communications device with respect to geographic features according to mapping information stored within the wireless mobile communications device, and wherein the first processor determines user navigation information and displays the user navigation information according to the location of the wireless mobile communications device with respect to the geographic features and a destination specified at the wireless mobile communications device, wherein the first processor further sends the user navigation information to the network as a number of segments, wherein at least one other processor outside the network updates the user navigation information in conformity with traffic congestion information accessible to the at least one other processor outside the network by computing a numerical value for the segments corresponding to the expected time to travel through the segments, updates the user navigation information in conformity with the numerical values for the segments, and sends the updated user navigation information to the wireless mobile communications device;
>
> at least one second radio-frequency transceiver and an associated at least one second antenna of the wireless communications network to which the second radio-frequency transceiver is coupled; and
>
> a second processor coupled to the at least one second radio-frequency transceiver programmed to acquire the information indicative of a location of the wireless mobile communications device, wherein the second processor selectively acquires the information indicative of a location of the wireless mobile communications device dependent on the setting of preference flags, wherein the second processor acquires the information indicative of a location of the wireless mobile communications device if the preference flags are set to a state that permits tracking of the wireless mobile communications device, and wherein the second processor does not acquire the information indicative of the location of the wireless mobile communications device if the preference flags are set to a state that prohibits tracking of the wireless mobile communications device.

(Dkt. No. 23-1 at 163.)

Plaintiff filed the FAC, (Dkt. No. 23), after Google moved to dismiss the initial complaint,

1    (Dkt. Nos. 1, 12).  Google then filed a motion to dismiss the FAC, and the case was transferred to

2    this Court.  (Dkt. Nos. 31, 50.)  Google's motion to dismiss the FAC is pending now.

3                                              **DISCUSSION**

4           Google moves to dismiss Plaintiff's claims for direct, indirect, and willful infringement of

5    Claim 1 in the '147 Patent.   The Court discusses each claim in turn.

6    **I.      Direct Infringement**

7           Under 35 U.S.C. § 271(a), a party that "makes, uses, offers to sell, or sells any patented

8    invention, within the United States or imports into the United States any patented invention during

9    the term of the patent therefor, infringes the patent."  Plaintiff alleges Google "use[s]" Claim 1 of

10   the '147 patent via the "Google Maps online navigation service and the Google Maps server-side

11   or cloud infrastructure." (Dkt. No. 23 at 4 ¶ 10.)  Google objects the FAC fails to plausibly allege

12   that Google "uses" Claim 1 because Google neither controls nor benefits from each claim element.

13   The Court agrees.

14   **A.      The Definition of "Use"**

15          The Federal Circuit distinguishes between infringement claims alleging "use" of a

16   "system" and claims about "use" of a "process."  *See NTP, Inc. v. Research in Motion, Ltd.*, 418

17   F.3d 1282, 1317 (Fed. Cir. 2005).  A process is a sequence of actions.  *Id.*  A process patent is not

18   "used" unless each step is performed in a specified order.  *Id.* at 1318.  By contrast, a "system" is

19   used "as a whole."  *Id.* at 1317.  In *NTP*, the Federal Circuit held that "to use" a system means

20   both to control the system and obtain a benefit from it.  *Id.*  Subsequent cases clarified that "to

21   use" a system "a person must control (even if indirectly) and benefit *from each claimed*

22   *component.*"  *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed.

23   Cir. 2017) (citing *Centillion Data System, LLC v. Qwest Communications International, Inc.* 631

24   F.3d 1279, 1283–84 (Fed. Cir. 2011)) (emphasis added).

25   **1.      Control**

26           "Control" can occur even in cases where different parties own or physically possess the

27   relevant elements in the system claim. *Centillion*, 631 F.3d at 1283–84.  In *Centillion*, the claim at

28   issue required an end user-maintained "front-end" system and service provider-maintained "back-

United States District Court
Northern District of California

United States District Court
Northern District of California

end" system. *Id.* at 1281. The defendant provided "front-end" software to its customers and provided "back-end" data processing services. *Id.* The customers used the "front-end" software to trigger data processing by the defendant's "back-end" system. *Id.* The court held that *customers* "used" the entire system because they entered queries into the front-end that caused the back-end to perform the processing the claim required. *Id.* at 1285. It did not matter that a third party "physically possessed" the back-end processing, because customers had control via the "ability to place the system as a whole into service." *Id.* at 1284.

But the defendant in *Centillion*—who provided back-end services and front-end software—did not "use" the patented invention. *Id.* at 1286. Merely making the processing system does not "put the claimed invention into service, i.e., control the system and obtain a benefit from it," because "[s]upplying the software for the customer to use is not the same as using the system." *Id.* While the defendant provided software and technical assistance, "it is entirely the decision of the customer whether to install and operate this software on its personal computer data processing means." *Id.* at 1287. Thus, the customer "used" the system and controlled each element, but the service provider did not. *Id.*

### 2. Benefit

To infringe, a party must also benefit from each element in the system claim. *Intellectual Ventures*, 870 F.3d at 1329. It is insufficient to prove that the infringer benefits from the "system as a whole." *Id.* Rather, the alleged benefits must be "tangible, not speculative, and tethered to the claims." *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018) (applying *Intellectual Ventures* and holding, in an unpublished opinion, that plaintiff's benefit allegations were insufficient to survive a motion to dismiss).

\* \* \*

In sum, "infringing use of the claimed system under § 271(a) requires the patentee to demonstrate that the direct infringer obtained benefit from each and every element of the claimed system. In addition, the direct or indirect control required is the ability to place the system as a whole into service." *Intellectual Ventures*, 870 F.3d at 1329 (cleaned up).

//

4

1       **B.      Application**

2           Claim 1 includes at least: (1) "a first radio-frequency transceiver" in a device, which is

3   "coupled" to an "associated first antenna," (2) a "first processor" within the device and coupled to

4   the "first radio-transceiver" that receives information, generates location and navigation

5   information, and sends the user navigation information to a wireless network, (3) at least one

6   "other processor outside the network" that updates the user navigation information "in conformity

7   with traffic congestion information accessible to the at least one other processor," and sends that

8   information to the device, (4) at least one "second radio-frequency transceiver and an associated at

9   least one second antenna of the wireless communications network," (5) and a "second processor"

10  coupled to the "second radio-frequency transceiver." (Dkt. No. 23-1 at 163.)

11          The parties dispute whether the FAC plausibly alleges that Google "uses" the system

12  described in Claim 1 via its Google Maps product.  To plead system infringement by "use,"

13  Plaintiff must plead that Google controls and benefits from each element in Claim 1.  *Intellectual*

14  *Ventures*, 870 F.3d at 1329.  Plaintiff failed to do so.

15          Plaintiff's "use" claim fails to allege how Google "controls" each claim element.

16  *Centillion* is precisely on point.  There, the Federal Circuit held that "[s]upplying the software for

17  the customer to use is not the same as using the system." *Centillion*, 631 F.3d at 1286.  The same

18  is true here.  The FAC alleges that Google provides software that a *user* can configure to practice

19  Claim 1.  (Dkt. No. 23 at 34, 69, 73.)  But, as in *Centillion*, that is insufficient to state a claim

20  against the software provider.  *See Centillion*, 631 F.3d at 1286.

21          Plaintiff's arguments to the contrary are unpersuasive.  Plaintiff argues that "Traxcell also

22  explicitly pleads evidence that Google Maps controls the wireless communication networks such

23  that they provide a result, *e.g.*, location information, for Google Maps to use and for its specific

24  benefit." (Dkt. No. 33 at 7.)  But Plaintiff does not cite to a single FAC allegation to support that

25  statement.     The FAC does provide one conclusory allegation:

26

27                  Defendant derives benefits from claim elements met by third party
                    wireless communication networks such as Verizon, AT&T, and T-
                    Mobile (identified by name in the evidence charts above). Those
28                  benefits include performing the specifically identified functions of

United States District Court
Northern District of California

United States District Court
Northern District of California

> those wireless communication networks (e.g., communicate location of a wireless mobile communications device). Defendant obtains those benefits by putting those functionalities into use, i.e. controlling them, as per the evidence charts mentioned above.

(Dkt. No. 23 at 109 ¶ 10.)  But the evidence charts in the FAC do not explain how Google controls each element rather than a user doing so via Google Maps.  For example, the FAC explains in detail how a user can utilize Google Maps to obtain navigation information. (*See*, *e.g.*, *id.* at 59.) But there is no allegation that Google Maps operates independent of a user.  To the contrary, Plaintiff's claim chart provides screenshots of developer documentation titled: "Requesting User Permissi[on]," with the subtext "without these permissions, your application will fail at runtime when requesting location updates." (*Id.* at 34, 69, 73.)  The FAC also cites user instructions that state: "You must enable location services to use Google Maps" to get directions and other location-based information.  (*Id.* at 11.)  Thus, as in *Centillion*, it is the customers' choice to use the Google Maps product and enable location services.  *Centillion*, 631 F.3d at 1287.  While a customer may "use" the system in Claim 1, Plaintiff fails to explain how Google directly infringes through "use" of each element in Claim 1.[2]

Because Plaintiff's FAC does not plausibly allege Google's "use" of the patented invention, Plaintiff's claim for "direct" infringement under § 271(a) is dismissed.

**II.     Indirect Infringement**

Plaintiff also alleges both contributory and induced infringement.  (Dkt. No. 23 at 113 ¶¶ 16, 24.)  Contributory infringement requires knowledge.  The statute defines the offense as:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, **knowing** the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

---

[2] Because Plaintiff fails to explain how Google "controls" the elements in Claim 1, the Court need not address Google's motion to dismiss based on the "benefit" prong of the system use analysis or alleged impossibilities in the claim chart.

1    35 U.S.C. § 271(c) (emphasis added).  Induced infringement, under § 271(b), also requires

2    knowing inducement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011)

3    ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute

4    patent infringement.")  Thus, both claims require that Google had knowledge of the '147 patent.

5            **A.**     **Pre-Suit Indirect Infringement**

6           Plaintiff alleges Google had knowledge of the '147 patent as of:

7

8          [A]t least the date of the patent's issuance, or from the issuance of the

9          '284 patent, which followed the date that the patent's underlying application was cited to Defendants by the U.S. Patent and Trademark Office during prosecution of one of Defendant's patent applications,

10         such that Defendant knew and should have known that it was and would be inducing infringement.

11   (Dkt. No. 23 at 111 ¶¶ 14, 18.)  The '147 patent was issued on October 27, 2020.  (Dkt. No. 23-1

12   at 1.)  The FAC does not provide the issuance date of the '284 Patent nor does the FAC plead the

13   '284 Patents' full patent number.  However, the '147 Patent does list U.S. Pat. No. 8,977,284 as

14   issued on March 10, 2015.  (*Id.* at 100.)  Google confirms the '284 Patent is U.S. Pat. No.

15   8,977,284 and lists the same March 10, 2015, issuance date.  (Dkt. No. 35 at 8.)

16          These pleadings are insufficient to state claims for contributory or induced infringement.

17   Working chronologically, the '284 Patent was issued five years prior to the '147 Patent.  The

18   March 10, 2015 issuance could not give notice of the '147 Patent because that patent would not

19   exist for another five years.  To have knowledge of a patent, the patent must exist.  *See State*

20   *Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (describing the knowledge

21   requirement in the willful infringement context); *see also Fluidigm Corp. v. IONpath, Inc.*, No.

22   19-05639 WHA, 2020 WL 408988, at *3 (N.D. Cal. Jan. 24, 2020) ("Defendant could not have

23   divined the *eventual* issuance of the two patents *eight-years later.*") (emphasis in original).

24   Plaintiff does not explain (in the FAC or in its opposition) when or in what context the U.S. PTO

25   cited "the patent's underlying application to Defendants."  Indeed, that language appears to be

26   boilerplate.  (*See* Eastern District of Texas, Case No. 2:17-cv-00718-RWS-RSP, Dkt. No. 1 ¶¶ 13,

27   20, 27, 34.)  Finally, Plaintiff's citation to the issuance date of the '147 Patent is unavailing.

28   Plaintiff pleads "Defendant has known and should have known of the '147 patent, by at least the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    date of the patent's issuance."  (Dkt. No. 1 at 111 ¶ 18.)  That statement contains no facts that

2    would plausibly support an inference of Google's actual knowledge.  *See Nobelbiz, Inc. v.*

3    *Insidesales.com, Inc.*, No. 6:13-CV-360-MHS, 2014 WL 12378804, at *3 (E.D. Tex. Oct. 14,

4    2014) (requiring "actual knowledge, not just constructive knowledge based on issuance and

5    publication of a patent.") (citing *Global-Tech*, 563 U.S. at 763).  Rather, Plaintiff merely offers "a

6    formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

7    544, 555 (2007).  That is insufficient to survive a motion to dismiss under Federal Rule of Civil

8    Procedure 12(b)(6).  *Id.*

9    　　　　In the briefing, Plaintiff makes an additional argument not detailed in the FAC.  (Dkt. No.

10   33 at 5.)  Plaintiff describes litigation in the Eastern District of Texas involving "a related '284

11   patent from the same patent family," in which a Google software engineer "was deposed at length

12   concerning the technology at issue in June 2019, more than a year prior to the issuance of the '147

13   patent-in-suit in October 2020."  (*Id.* at 11–12.)  While this argument cannot serve as the basis for

14   a claim because it is wholly absent from the FAC, even if the Court were to consider it, it still

15   fails.  Google could not have had notice of the '147 Patent "more than a year prior" to its

16   issuance—even if the technology mentioned in that deposition was similar.  As the Federal Circuit

17   has explained in the patent application context:

18   　　　　A "patent pending" notice gives one no knowledge whatsoever. It is
     　　　　not even a guarantee that an application had been filed. Filing an
19   　　　　application is no guarantee any patent will issue and a very substantial
     　　　　percentage of applications never result in patents. What the scope of
20   　　　　claims in patents that do issue will be is something totally
     　　　　unforeseeable.

21   *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).  Thus, the FAC fails to

22   plausibly allege Google's actual, pre-suit knowledge and therefore fails to state a claim for indirect

23   infringement.

24   　　　　**B.    Post-Suit Indirect Infringement**

25   　　　　In its opposition, Plaintiff contends that even if Google did not have notice prior to this

26   action, it has "post-suit" knowledge of the patent based on the original complaint. (Dkt. No. 33 at

27   5.)  But as a technical matter, the allegation of "post-suit" knowledge does not appear in the FAC.

28   At most, Plaintiff alleges that Google "continues" to indirectly infringe via inducement and

1    contributory infringement.  (Dkt. No. 31 at 110–111 ¶¶ 16, 19.)  The FAC never mentions the

2    original complaint as a basis for notice.  The Court can, however, draw a reasonable inference

3    from the word "continues" and the title of the complaint "Plaintiff's Amended Complaint," that

4    Google did have knowledge when it was served with the original complaint on December 16,

5    2021.  (Dkt. No. 5.)

6          Although the Federal Circuit has not provided explicit guidance on the issue,[3] most district

7    courts permit induced infringement claims to go forward without pre-suit knowledge of a patent

8    and have limited recovery to post-suit conduct.  *Lyda v. CBS Interactive, Inc.*, No. 16-CV-06592-

9    JSW, 2017 WL 783807, at *3 (N.D. Cal. Mar. 1, 2017) (collecting cases and noting the split in

10   authority as to whether post-suit knowledge is sufficient).  The majority view bases the adequacy

11   of post-suit knowledge on there being no sound reason that a defendant should avoid liability for

12   an indirect infringement claim when it continues "to promote infringing uses of their products

13   after learning about the patents," simply "because it happened to learn of the patent in connection

14   with a lawsuit." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 881 (E.D. Va.

15   2013).  The minority view argues it preserves judicial economy to require pre-suit knowledge to

16   state a claim because that encourages settlement and pre-suit negotiation.  *Id.* Absent further

17   guidance form the Federal Circuit, the Court will consider whether Plaintiff's FAC states a claim

18   for post-suit indirect infringement.

19              **1.       Post-Suit Contributory Infringement**

20          To state a claim for contributory infringement, the complaint must plead (1) knowledge of

21   the patent, (2) knowledge of the acts alleged to be infringement, (3) that the accused infringer's

22   component is not suitable for a substantial non-infringing use; and (4) that the accused infringer's

23   component is material to practicing the claimed invention.  *BillJCo, LLC v. Apple Inc.*, 583 F.

24   Supp. 3d 769, 781–82 (W.D. Tex. 2022); *see also Arris Grp., Inc. v. Brit. Telecommunications*

25

26   _____

27   [3] For example, in *In re Bill of Lading Transmission and Processing System Patent Litigation*, the Federal Circuit found the plaintiff sufficiently alleged claims for induced infringement. 681 F.3d 1323, 1345-45 (Fed. Cir. 2012). There, the plaintiff partially relied on the complaint to allege the

28   defendant knew of the patent. *Id.* But the court did not directly hold a complaint is sufficient to show a defendant has the requisite knowledge of a patent for purposes of induced infringement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) (applying this test to both system and method claims).

2       Assuming Plaintiff adequately pled post-suit knowledge, Plaintiff's complaint fails to state

3    a claim as to the third prong—the lack of a substantial non-infringing use.  Plaintiff recites

4    "Google Maps application and Google Server are not staple article of commerce because there is

5    no substantial non-infringing use of these products and features other than to practice the claimed

6    invention." (Dkt. No. 23 at 112 ¶ 22.)  This claim merely parrots the elements of the cause of

7    action.  *Twombly*, 550 U.S. at 555.  Moreover, as Google notes, the FAC belies this claim and

8    describes numerous Google Maps functions that operate without a user enabling location services.

9    (*See*, *e.g.*, Dkt No. 23 ¶ 10 at 23, 40, 49.)  In other words, Google Maps functions as a digital

10   version of a paper map.  But the FAC fails to engage with this prong and instead mimics the

11   language of the cause of action.  At this stage, that is insufficient. *Twombly*, 550 U.S. at 555.

### 2.    Post-Suit Induced Infringement

12       35 U.S.C. § 271(b) provides that "[w]hoever actively induces infringement of a patent

13   shall be liable as an infringer."  In order "[t]o establish liability under section 271(b), a patent

14   holder must prove that once the defendants knew of the patent, they actively and knowingly aided

15   and abetted another's direct infringement."  *DSU Medical Corp. v. JMS Co. Ltd.*, 471 F.3d 1293,

16   1305 (Fed. Cir. 2006).

17       As to post-suit induced infringement, Plaintiff states a claim.  (See Dkt. No. 23 at 110 ¶

18   16.)  First, as discussed above, post-suit knowledge is sufficient to state a claim for post-suit

19   damages.  See *Rembrandt*, 950 F. Supp. 2d at 881.  The FAC details numerous instances where

20   Google explains to users, via its product documentation, how to engage in the allegedly infringing

21   activity—enabling and practicing location services, and route navigation with traffic services.

22   (*See* Dkt. No. 23 at 100.)  Thus, Google's motion is DENIED as to post-suit induced infringement.

### III.    Willful Infringement

24       Willful infringement is a question of fact. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d

25   964, 987 (Fed. Cir. 2021) (citing *Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed.

26   Cir. 2018)).  To establish willfulness, the patentee must show the accused infringer had a specific

27   intent to infringe at the time of the challenged conduct. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*,

28   136 S. Ct. 1923, 1933 (2016). As the Supreme Court stated in *Halo*, "[t]he sort of conduct

10

United States District Court
Northern District of California

1    warranting enhanced damages has been variously described in our cases as willful, wanton,

2    malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a

3    pirate." *Id.* at 1932. A patentee needs to show by a pre-ponderance of the evidence the facts that

4    support a finding of willfulness. *Id.* at 1934. Thus, Knowledge of the asserted patent and evidence

5    of infringement are necessary, but not sufficient, for a finding of willfulness. *Id.*  Rather,

6    willfulness requires deliberate or intentional infringement. *Id.*

7            Plaintiff's post-suit willful infringement argument can survive as to the induced

8    infringement.  Willful infringement requires knowledge.  *Bayer Healthcare*, 989 F.3d at 988.  As

9    noted above, the FAC fails to plausibly allege Google's pre-suit knowledge of the '147 patent.

10   Thus, Plaintiff's willful infringement claim is dismissed as to any pre-suit infringement. Plaintiff

11   does, however, plead post-suit knowledge and indirect inducement.  Here, Plaintiff pleads that

12   Google knew its conduct was infringing but proceeded anyway. (Dkt. No. 23 at 112–113 ¶ 24.)

13   Viewing all inferences in favor of Plaintiff at this stage, that allegation could constitute

14   "consciously wrongful" behavior.  *Halo*, 136 S. Ct. at 1932.  Thus, Google's motion to dismiss is

15   denied as to the willful infringement allegation.

                                           **CONCLUSION**

17           For the reasons stated above, Google's motion to dismiss is GRANTED as to the direct

18   infringement claim, the contributory infringement claim, and the pre-suit induced infringement

19   claim.  Google's motion to dismiss is DENIED as to post-suit induced infringement and post-suit

20   willful infringement.  Plaintiff is granted 20 days leave to amend provided Plaintiff can amend

21   consistent with Plaintiff counsel's obligations under Federal Rule of Civil Procedure 11. The

22   Court will hold a further case management conference on January 5, 2023 at 1:30 p.m. via Zoom

23   video.  An updated joint case management conference statement is due December 22, 2022.

24           This Order disposes of Docket No. 31.

25           **IT IS SO ORDERED.**

26   Dated: November 17, 2022

27                                                         _____
                                                           JACQUELINE SCOTT CORLEY
28                                                         United States District Judge

                                                   11